CAMERON MUTUAL INSURANCE )
COMPANY, )
　 )
　Plaintiff, )
　 )　　Case No. 4:07CV01273 FRB
　　　　　v. )
　 )
HARCO NATIONAL INSURANCE )
COMPANY, )
　 )
　Defendant/Third-Party Plaintiff, )
　 )
　　　　　v. )
　 )
BAKER ICE COMPANY, INC., )
　 )
　Third-Party Defendant. )

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant Harco National Insurance Company's ("Harco") Motion For Summary Judgment (Docket No. 33/filed July 31, 2009); plaintiff Cameron Mutual Insurance Company's ("Cameron") Motion For Summary Judgment (Docket No. 35/filed July 31, 2009) and third-party defendant Baker Ice Company, Inc.'s (also "Baker") Motion for Summary Judgment Against Third-Party Plaintiff Harco National Insurance Company (Docket No. 39/filed August 7, 2009). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.　Background**

The undisputed facts relevant to each of the pending motions are as follows. Baker Ice Company distributes ice in Missouri and Illinois. Baker leased, from Hogan, a truck identified herein as Vehicle L-3447, and also identified by its Vehicle Identification Number ("VIN") 1HTSDAANXYH215950.[1] Baker had a Business Auto insurance policy through Cameron (hereafter "Cameron policy"), bearing policy number BA 71 2 0506639, which was in effect from September 28, 2004 to September 28, 2005 (Docket No. 34-2). Hogan had a Business Auto insurance policy through Harco (hereafter "Harco policy"), bearing policy number LR0005045 14, which was in effect from November 1, 2004 to November 1, 2005. (Docket No. 34-11).

The lease agreement between Baker and Hogan provided that Baker was to furnish liability insurance for each vehicle on the lease, covering both Baker and Hogan. (<u>Id.</u> at 30). In addition, on August 3, 2005, Baker signed a rental agreement specific to Vehicle L-3447. (Docket No. 34-7). Via initialing certain portions of the rental agreement, Baker agreed to provide minimum liability coverage and comprehensive and collision insurance, and also agreed to indemnify Hogan for any losses with respect to Vehicle L-3447 and its operation. (<u>Id.</u>) Although Cameron

---

[1]Mr. Timothy A. Baker, president of Baker Ice Company, testified via deposition and affidavit that, at the time of the accident, a truck it had leased from Hogan, identified as Vehicle L-4677, was out of commission due to damage, and Vehicle L-3447 was leased by Baker as a substitute. (Docket Nos. 34-5 at 9-10, 34).

initially disputed that its policy provided primary insurance for Vehicle L-3447, Cameron later admitted that its policy provided such coverage.

On August 5, 2005, M.P., an employee of Baker, was driving Vehicle L-3447, and was involved in a motor vehicle accident with D.L.[2] D.L. subsequently sued Baker, M.P., and Hogan. Cameron provided defense and indemnity, and paid $850,000.00 to D.L. in settlement.

Cameron filed the original Complaint against Harco, seeking declaratory judgment and equitable contribution. Therein, Cameron argued that Hogan, Baker and M.P. were all insured under the Harco policy, and that the truck M.P. was driving was a "covered auto" under such policy. Cameron argued that Harco was therefore responsible for some, or all, of the amounts Cameron paid to defend and settle the lawsuit. Harco filed an Answer denying liability to Cameron, and specifically denied the portions of the Complaint alleging that its policy provided insurance coverage. In addition, Harco argues herein that its policy contained an endorsement entitled "Leasing or Rental Concerns - Contingent Coverage" (also "Contingent Coverage endorsement"), pursuant to which Harco owed no insurance coverage.

Harco also filed a Third-Party Complaint against Baker.

---

[2]In the interests of privacy, the individuals involved in the motor vehicle accident that gave rise to the underlying lawsuit are identified herein by their initials only.

(Docket No. 14/filed September 20, 2007). Therein, Harco argues that Vehicle L-3447 was subject to a rental agreement between Baker and Hogan, wherein Baker was required to provide primary insurance in the amount of one million dollars, and Hogan was to provide no insurance. In its Third-Party Complaint, Harco seeks a judgment that Baker will be responsible to indemnify Harco for any amounts that this Court might order Harco to pay to Cameron. Specifically, Harco states: "if this Court finds [Harco] monetarily responsible pursuant to [Cameron's] Complaint, then, in that event, [Baker] is responsible to [Harco] for said judgment, based on the contractual obligations of [Baker] set forth in [the lease agreement between Baker and Hogan]." (Id. at 2).

A.    Harco's Motion for Summary Judgment

In its motion for summary judgment, Harco contends that Cameron's insurance policy provided primary insurance coverage for the accident in question, and that its own policy provided no coverage. In response, Cameron admitted that its policy provided primary insurance coverage for the accident in question.[3] Cameron

---

[3]This was not Cameron's position in its Complaint or in its own Motion For Summary Judgment. However, in its Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment, (Docket No. 42), Cameron admitted that the Cameron policy provided primary insurance coverage for Vehicle L-3447. Cameron made this same admission in its Memorandum Of Law In Reply To Defendant's Response To Plaintiff's Motion For Summary Judgment. (Docket No. 45). Inasmuch as Cameron has unequivocally admitted that the Cameron policy provided primary insurance coverage for the accident in question, which has been Harco's position all along, it is now an undisputed fact that the Cameron policy provided primary insurance coverage for the accident in question. The undersigned also notes that the fact that the Cameron policy provided primary insurance coverage for Vehicle L-3447

argues, however, that, absent a valid exclusionary provision, the Harco policy also provided primary coverage for the accident, and for Hogan, Baker, and M.P. independently. Cameron's reasoning appears to be that Vehicle L-3447 was owned by Hogan, and Baker and M.P. were using the vehicle with Hogan's permission, and the Harco policy clearly covered such vehicles. Cameron concludes that Harco is therefore responsible for a pro rata share of the underlying civil settlement. Cameron also argues that: (1) Harco did not plead the Contingent Coverage endorsement as an affirmative defense and has therefore waived its right to assert it; (2) the Contingent Coverage endorsement was never properly made a part of the Harco policy; (3) the Contingent Coverage endorsement renders the Harco policy ambiguous; (4) an "other insurance" clause in the Harco policy affords coverage; and (5) the Harco policy states that Harco's coverage is primary for any liability assumed under an "insured contract," and if the rental/lease agreements are deemed "insured contracts," Harco's coverage is primary. Having carefully considered the arguments of both parties, the undersigned concludes that Harco's Motion For Summary Judgment should be granted.

Because this matter is before this Court pursuant to diversity jurisdiction, this Court must apply Missouri's substantive law, and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (federal court sitting in diversity

_____

during the time in question is supported by the record.

must apply the forum state's substantive law, and federal procedural law); <u>see also</u> <u>Winthrop Resources Corp. v. Stanley Works</u>, 259 F.3d 901, 904 (8th Cir. 2001). In the case at bar, both parties rely upon Missouri law. <u>Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.</u>, 528 F.3d 556, 561 (8th Cir. 2008) (internal citation omitted)(assuming that Missouri law controls where both parties relied on Missouri law).

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); <u>see also</u> <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, (1986)("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. <u>See</u> <u>Celotex</u>, 477 U.S. at 322. Where the record taken as a whole could not lead a rational trier of fact

6

to find for the nonmoving party, there is no "genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 586.

The undersigned will first address Cameron's argument that Harco waived its right to rely upon the lack of coverage as a defense because Harco failed to plead, as an affirmative defense, that its policy did not provide primary coverage. "Generally, failure to plead an affirmative defense results in a waiver of that defense." <u>First Union National Bank v. Pictet Overseas Trust Corp., Ltd.</u>, 477 F.3d 616, 622 (8th Cir. 2007) (citing Fed.R.Civ.P. 8(c)). However, as the Eighth Circuit noted, the Supreme Court has indicated that the Rule 8(c) pleading requirement is intended to give the opposing party notice of the defense, and an opportunity to rebut it. <u>Id.</u> (citing <u>Blonder-Tonque Labs, Inc. v. University of Illinois Foundation</u>, 402 U.S. 313, 350 (1971) (citation omitted)). The <u>First Union</u> court concluded that, therefore, a literal interpretation of Rule 8(c) "that places form over substance" would be rejected, and that, when an affirmative defense is raised in such a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) would not be fatal. <u>First Union</u>, 477 F.3d at 622 (citations omitted).

In the case at bar, it cannot be said that Harco's assertion of lack of coverage as a defense has resulted in unfair surprise or prejudice to Cameron, or that Cameron has been denied an opportunity to rebut such defense. In its Complaint, Cameron alleged that Harco provided insurance coverage for the underlying

lawsuit.  In response, Harco filed an answer specifically denying the allegation that its policy provided insurance coverage.  This was sufficient to apprise Cameron of Harco's intention to rely on an exclusion of coverage defense.  In addition, all of the facts relevant to Harco's coverage defense are on record, including a complete copy of the Harco policy, which contains the Contingent Coverage endorsement Harco notes in its defense.  "The Federal Rules were designed to liberalize pleading requirements." <u>Barnwell & Hays, Inc. v. Sloan</u>, 564 F.2d 254, 256 (8th Cir. 1977).  To hold herein that Harco's Answer was insufficient to raise the defense of lack of coverage and that Harco has waived that defense would be to impose a requirement of formality inconsistent with that liberal purpose.  <u>See</u> <u>Id.</u>

In response to Harco's Motion for Summary Judgment, Cameron contends that the Harco policy also provided primary insurance coverage, and that Baker and M.P. were independently considered insureds.

"The interpretation of the meaning of an insurance policy is a question of law."  <u>Langley v. Curators of University of Missouri</u>, 73 S.W.3d 808, 812 (Mo.Ct.App. 2002) (quoting <u>American Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett</u>, 31 S.W.3d 1, 4 (Mo.Ct.App. 2000)).  When courts interpret insurance policies, they should apply the rules applicable to contract construction. <u>Langley</u>, 73 S.W.3d at 812.  When construing the language of an insurance policy, the policy and the endorsements should be

construed as one contract and, if possible, courts should give effect to each and every provision thereof. Id. Courts should evaluate policies as a whole, rather than interpreting policy provisions in isolation. Seek v. Geico General Ins. Co., 212 S.W.3d 129, 133 (Mo. banc 2007).

When an insured seeks payment for a loss, he must seek payment from his primary insurance carrier first. Planet Ins. Co. v. Ertz, 920 S.W.2d 591, 593 (Mo.Ct.App. 1996). When an insured has two primary insurance policies, courts will often compare each of the policy's "other insurance" provisions to determine how liability should be allocated between the two insurers. Id.

Harco claims that the rental agreement in effect at the time of the accident absolves it from liability. Harco argues that, at the time of the accident, Baker was using Vehicle L-3447 subject to a rental agreement in which Baker agreed to provide the sole primary insurance coverage, and also agreed to indemnify Hogan for any losses associated with the vehicle. (Docket Nos. 34-5 and 34-7). Harco also notes that, pursuant to the rental agreement, Hogan was to provide no insurance. In response, Cameron contends that, under Missouri law, a policy of insurance is to be interpreted solely from its four corners, and that extrinsic evidence cannot be considered unless the policy has been deemed ambiguous. Cameron's argument is not well-taken.

The Missouri Court of Appeals has held that courts should consider obligations under an indemnity agreement before allocating

responsibility for the loss according to the relevant policies. _Federal Ins. Co. v. Gulf Ins. Co._, 162 S.W.3d 160 (Mo.Ct.App. 2005). In _Federal Ins. Co._, the trial court found that Federal was entitled to equitable contribution, and Gulf appealed, alleging error inasmuch as an indemnification agreement provided that Federal's insured was to indemnify Gulf's insured. _Id._ at 164. The Missouri Court of Appeals agreed with Gulf and reversed the trial court, stating that: "[i]n a variety of commercial relationships, such as lessor-lessee and contractor-subcontractor, the contracts between the parties contain indemnification agreements in which one agrees to hold the other harmless for its own acts of negligence or that of its employees. Such contractual arrangements can nullify a right to contribution." _Id._ (citation omitted). The court noted that other jurisdictions that had considered the issue of whether an indemnification agreement could relieve insurers of an obligation to pay, without resorting to an action to enforce the indemnification agreement, had answered in the affirmative. _Id._ at 165 (citing _St. Paul Fire & Marine Ins. v. Am. Intern. Spec. Lines_, 365 F.3d 263, 272 (4th Cir. 2004)). Those jurisdictions, the court noted, gave "controlling effect to the indemnity obligation of one insured to the other insured over 'other insurance' or similar clauses in the policies of the insurers, particularly where one of the policies covers the indemnity obligation." _Federal Ins. Co._, 162 F.3d at 165 (citations omitted).

The rationale, the court noted, was to give effect to the indemnity agreement between the parties. <u>Id.</u> "To hold otherwise would render the indemnity contract between the insureds completely ineffectual and would obviously not be a correct result, for it is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities one to the other." <u>Id.</u> (citing <u>Chubb Ins. Co. of Canada v. Mid-Continent Cas. Co.</u>, 982 F.Supp. 435, 438 (S.D. Miss. 1997)). "Courts should consider obligations under an indemnity agreement before allocating responsibility for the settlement liability according to the terms of the relevant policies." <u>Id.</u> (citing <u>St. Paul</u>, 365 F.3d at 277). To apportion the loss pursuant to certain clauses in the policies without considering the indemnification agreement would effectively negate that agreement and impose liability on a party who bargained for indemnity as part of the consideration for the contract. <u>Federal Ins. Co.</u>, 162 F.3d at 165 (citations omitted).

In the case at bar, the rental agreement in effect at the time of the accident provided that Baker would be responsible for providing insurance coverage for Vehicle L-3447, and that Baker would indemnify Hogan for any losses incurred arising from the

vehicle or its operation.[4]  On the front page of the rental
agreement, there is a section entitled "LIABILITY INSURANCE AND
UNINSURED/UNDERINSURED MOTORIST INSURANCE." (Docket No. 34, Exh.
6, at p. 1).  In this section, the parties are required to choose
whether the customer or Hogan is to provide minimum liability
coverage, and comprehensive and collision insurance. (Id.)  For
both, the line indicating that coverage is to be "provided by
customer" is selected, via initials, and the line indicating that
coverage is to be "provided by Hogan" is left blank, and not
selected.  (Id.)  Furthermore, paragraph 8 provides that the
customer is to indemnify Hogan for all damages and losses with
respect to the vehicle and its operation. (Id. at p. 2).  Cameron
does not dispute that the rental agreement so provides.  Having
carefully considered the rental agreement, the undersigned
concludes that nothing therein can be interpreted as indicating
that Hogan was to provide any insurance coverage for Vehicle L-3447
while it was subject to the rental agreement.

    Cameron argues against applying Federal Ins. Co. to the
present facts, inasmuch as Baker and M.P. were independently
insured under the Harco policy.  Cameron argues that the Harco
policy provided primary coverage, and that Baker and M.P. were

_____

    [4]Also in evidence is the fact that Vehicle L-3447 was a substitute for
another vehicle which was subject to a long-term lease, which also provided that
Baker would provide primary insurance coverage and indemnify Hogan.  Discussion
of the long-term lease is unnecessary, however, because it is not the focus of
the parties' arguments, and because the parties do not dispute that the rental
agreement specified Vehicle L-3447, and was clearly in effect at the time of the
accident.

insured under the Harco policy, both in response to Harco's Motion for Summary Judgment and in the pleadings related to its own Motion for Summary Judgment.

Cameron asserts that, because Hogan owned Vehicle L-3447, and because Baker and M.P. were using that vehicle with Hogan's permission, the Harco policy covers Baker and M.P. This argument is not well-taken. Baker and M.P. were not named insureds under the Harco policy. Absent the rental agreement, Baker had no right to use Vehicle L-3447 during the time in question, and it could certainly could not be said that Baker and M.P. qualified as insureds under the Harco policy before the rental agreement was executed. At the time of the accident, Baker's employee, M.P., was driving the vehicle subject to the rental agreement between Baker and Hogan. When Baker signed the lease agreement giving it and its employee, M.P., the right to use Vehicle L-3447, Baker agreed to provide primary insurance coverage, which it undisputedly did via the Cameron policy. The parties' rights and liabilities to each other determine the insurance coverage. Federal Ins. Co., 162 S.W.3d at 165 (citing Chubb Ins. Co. of Canada, 982 F.Supp. at 438). The insurance coverage does not define the parties' rights and liabilities to each other. Id. "Courts should consider obligations under an indemnity agreement before allocating responsibility for the settlement liability according to the terms of the relevant policies." Id. (citing St. Paul, 365 F.3d at 277).

Cameron also argues that Baker and M.P. were covered

under the Harco policy for the accident in question because the Harco policy contained a clause which provided that "this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract.'" (Docket No. 42 at p. 5). Cameron concludes that, to the extent the lease agreements can be considered "insured contracts," the Harco policy provides primary insurance coverage for Baker and M.P. Cameron's argument is not well-taken. The clause Cameron cites cannot be interpreted to mean that Harco's coverage was also primary, inasmuch as Harco was not the insurer implicated when Baker agreed to provide primary insurance coverage; Cameron was. As noted above, the rental agreement cannot be interpreted to provide that Hogan assumed any liability for Vehicle L-3447 during the time the rental agreement was in effect. It therefore cannot be said that Harco assumed any liability under an insured contract.

Cameron also contends that Baker and M.P. were insureds under the Harco policy, and that Harco provided primary insurance coverage for the accident in question, because the Harco policy contained no applicable coverage limitation or exclusion. In response, Harco contends that the Contingent Coverage endorsement was specifically applicable to vehicles subject to a lease or rental agreement that provided that the lessee or rentee was to provide primary insurance. That endorsement reads as follows:

**LEASING OR RENTAL CONCERNS - CONTINGENT COVERAGE**

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM
> TRUCKERS COVERAGE FORM
>
> \* \* \*[5]

This endorsement changes the policy on the inception date of the policy unless otherwise indicated above

This endorsement applies when the "lease or rental agreement" in effect at the time of an "accident" specifies that the lessee or rentee is responsible for providing primary liability insurance or primary physical damage insurance.

Coverage is not provided for "autos" included on the "lease and/or rental receipts report" showing "No Insurance" except as indicated in **SECTION II.F.** "No Insurance" of the Lease or Rental Receipts Reporting and Coverage Options endorsement

**SECTION I.     COVERAGES**

**A.     LIABILITY INSURANCE** and any required no-fault, uninsured motorist and underinsured motorist insurance provided by the policy for a covered "auto" which is a "leased auto" or "rented auto" applies subject to the following provisions:

> 1.     At the time of an accident the insurance or indemnity as required in the "lease or rental agreement" is not collectible
>
> 2.     For you, your employees or agents, the limit of insurance provided by this endorsement is the lesser of
>
> > a.     The limits required by the "lease or rental agreement"; or
> >
> > b.     The limit shown on the Declarations Page
>
> 3.     For the lessee or rentee, any employee or agent of the lessee or rentee or any person, except you or your

---

[5]Underneath this text are four boxes with space to indicate the effective date of the endorsement, the policy number, the named insured, and a countersignature. As Cameron notes, these boxes are blank. The undersigned will address this issue, <u>supra</u>.

employees or agents, operating the leased or rented auto with the permission of any of these, the limit of insurance provided by this endorsement is the minimum limit required by any applicable compulsory or financial responsibility law This endorsement does not apply to the limit or limits specified by any law governing Motor Carriers of passengers or property

4.    The insurance provided by this endorsement does not apply if any other insurance is collectible

5.    The insurance provided by this endorsement does not apply as excess insurance to any other policy

**B.    PHYSICAL DAMAGE INSURANCE**, meaning "specified causes of loss" or "comprehensive coverage" and "collision coverage" provided by the policy for a covered "auto" which is a "leased auto" or "rented auto", applies subject to the following provisions:

1.    At the time of an accident the insurance or indemnity as required in the "lease or rental agreement" is not collectible

2.    A $5,000.00 deductible will apply to every loss covered under the physical damage insurance.

3.    The insurance provided by this endorsement does not apply if any other insurance is collectible

4.    The insurance provided by this endorsement does not apply as excess insurance to any other policy

        *  *  *

(Docket No. 43, Exh. 10, at p. 28).


        As an initial matter, the undersigned notes that Cameron

contends that this endorsement was never part of the Harco policy

because the boxes soliciting information such as the effective date

of the endorsement and the policy number were left blank.

Cameron's claim is refuted by the record before the Court.  Harco

provided an authenticated and complete copy of the Harco policy,

which is a total of 62 pages long. (Docket No. 34, Exh. 10).
Cameron, on the other hand, produced an unauthenticated copy of the
Harco policy (totaling only 35 pages) that did not contain the
Contingent Coverage endorsement. (Docket No. 36, Exh. G). The
authenticated Harco policy contains the Contingent Coverage
endorsement, and also contains a Schedule of Forms and Endorsements
section, which notes the Harco policy number, and reflects that the
Contingent Coverage endorsement was part of the Harco policy. In
addition, Geri Zinn, Chief Financial Officer for Harco, and Sally
Johnson, Harco's Regional Underwriting Manager, both testified via
sworn affidavits that the Contingent Coverage endorsement was part
of the Harco policy during the relevant time period. (Docket Nos.
44, Exh. 19 and 44, Exh. 20). In her affidavit, Ms. Johnson also
explained that the reason that the boxes were left blank is because
the form is computer generated, and that the endorsement is listed
on the Schedule of Forms and Endorsements. (Docket No. 44, Exh.
20).

Cameron also contends that the Contingent Coverage
endorsement is inherently ambiguous because it provides that
coverage will not be provided for "'autos' that are included on the
'lease and/or rental receipts report' showing 'No Insurance' except
as indicated in **SECTION II F.** 'No Insurance of the Lease or Rental
Receipts Reporting and Coverage Options endorsement.'" (Docket No.
42 at pp. 14-15). The portion of the Contingent Coverage

endorsement Cameron challenges reads as follows:

> Coverage is not provided for "autos" included on the "lease and/or rental receipts report" showing "No Insurance" except as indicated in **SECTION II.F.** "No Insurance" of the Lease or Rental Receipts Reporting and Coverage Options endorsement

(Docket No. 43, Exh. 10, at p. 28).

Cameron contends that, because there is no such endorsement to the Harco policy, it is "impossible to determine under what limited circumstances this exclusionary endorsement applies when the other endorsement that it requires be referred to in order to make such a determination does not even exist or was never made a part of the Harco policy." (Docket No. 42 at p. 15). Cameron concludes that this creates an inherent ambiguity, and requires that the Harco policy be construed in favor of coverage. The Contingent Coverage endorsement states that "Coverage is not provided for 'autos' included on the 'lease and/or rental receipts report' showing 'No Insurance.'" (Docket No. 43, Exh. 10, at p. 28). While Harco appears to argue that this paragraph provides that there is no coverage for autos included on a lease showing no insurance, this conclusion is belied by Section II, titled "Additional Definitions." There, the term "Lease and/or rental receipts report" is defined as, _inter_ _alia_, a monthly report listing all leased and rented autos. It therefore does not seem that the paragraph in question applies to autos listed on a lease, as Harco seems to suggest, but rather, to autos listed on a

18

specific monthly report, which Harco does not provide or reference. This does not, however, as Cameron contends, render the policy ambiguous. "Whether a contract is ambiguous is a question of law." Topps v. City of Country Club Hills, 272 S.W.3d 409, 416 (Mo.Ct.App. 2008) (citing Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc., 171 S.W.3d 70, 72 (Mo.Ct.App. 2005)). A trial court "must consider the whole instrument and the natural and ordinary meaning of the language" when determining whether a contract is ambiguous. Klonoski, 171 S.W.3d at 72-73. A contract is only ambiguous if "the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." Id. at 73.

The unambiguous language of the Contingent Coverage endorsement very clearly states that the endorsement applies when a lease or rental agreement in effect at the time of an accident specifies that the lessee or rentee is responsible for providing primary liability insurance or primary physical damage insurance. In this case, it is undisputed that Vehicle L-3447 was subject to a rental agreement in effect at the time of the accident. The endorsement also unambiguously specifies that the policy does not provide insurance coverage if the lessee/rentee has collectible insurance in place. In this case, it is undisputed that Baker had insurance in place, via the undisputedly primary Cameron policy, and it is undisputed that such insurance was collectible.

According to the unambiguous language of the endorsement, the Harco policy did not cover the accident in question, nor did Baker or M.P. have coverage under the Harco policy.

Finally, Cameron invokes the "other insurance" clause of the Harco policy. As Cameron cites in its brief, that clause provides, in pertinent part:

When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

(Docket No. 36 at p. 8).

As Cameron notes, the purpose of "other insurance" clauses is to "vary, reduce, or eliminate the insurer's loss in the event of concurrent coverage of the same risk." Distler v. Reuther Jeep Eagle, 14 S.W.3d 179, 183 (Mo.Ct.App. 2000). However, the other insurance provision of the Harco policy applies when it, along with some other policy, potentially provide coverage. Here, the Harco policy does not potentially provide coverage, so the "other insurance" clause never comes into effect.

The undisputed facts, viewed in the light most favorable to Cameron, show that the Harco policy neither independently covered Baker or M.P., nor did it provide coverage for the accident in question. There is no genuine issue of material fact. Harco is entitled to summary judgment in its favor.

B.    Cameron's Motion for Summary Judgment

In its Motion for Summary Judgment, Cameron alternately argues that Vehicle L-3447 was not covered under its policy, and that Cameron's coverage was excess over Harco's because Vehicle L-3447 was not a vehicle deemed owned by Baker. (Docket Nos. 35 and 36). Later, in its reply to Harco's response (and in its reply to Harco's Motion for Summary Judgment) Cameron conceded that its coverage was primary, but that Harco also provided primary coverage, and that Baker and M.P. were independently covered. These arguments have been addressed and resolved in Harco's favor, as discussed, <u>supra</u>. Cameron's Motion for Summary Judgment should therefore be denied.

C. <u>Baker's Motion for Summary Judgment</u>

In its Motion for Summary Judgment, Baker argues that Harco lacks standing to bring an action to enforce the lease between Baker and Hogan; Baker fully complied with the obligation it owed to Hogan pursuant to the lease; and that Harco cannot subrogate against Baker because Baker is Harco's insured. In so arguing, Baker avers that "Harco's claim against Baker only becomes relevant in the event that this Court first finds that Baker is an insured under the Harco policy and that Harco's policy provides coverage for Baker for the August 5, 2005 accident." (Docket No. 40 at 11). Indeed, in its third-party claim against Baker, Harco alleges that Baker had a contractual obligation to provide the primary insurance coverage for the underlying action, and that if the Court would find Harco had primary or pro rata coverage for the

underlying action, Baker would owe Harco's damages.  Because the undersigned has found that the Harco policy did not cover the accident in question, and that Baker and M.P. were not insured under the Harco policy, and because Harco agrees that its claim against Baker is moot in the event this Court determines that Harco owes no contribution to Cameron, the undersigned finds that Baker's Motion for Summary Judgment should be denied as moot.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Harco's Motion for Summary Judgment (Docket No. 33) is **GRANTED** as provided herein.

**IT IS FURTHER ORDERED** that Plaintiff Cameron Mutual Insurance Company's Motion For Summary Judgment (Docket No. 35) is **DENIED.**

**IT IS FURTHER ORDERED** that Third-Party Defendant Baker Ice Company, Inc.'s Motion for Summary Judgment Against Third-Party Plaintiff Harco National Insurance Company (Docket No. 39) is **DENIED** as moot.

Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of December, 2009.